THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| STEVEN SHOCKEY | * | CIVIL ACTION NO. 04-2374 |
| Versus | * | JUDGE JAMES |
| POLAR CORP, ET AL | * | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion for Summary Judgment (Doc. #44) filed by Defendant, Polar Corp. For the reasons stated below, it is recommended that the motion be **DENIED.**

On March 5, 2004, Plaintiff Steven Shockey ("Shockey"), an operator of an 18-wheeler owned by CTL Corporation ("CTL"), was delivering a chemical product to the Weyerhaeuser Company ("Weyerhaeuser") facility in Campti, Louisiana. The product was contained in a tank trailer with a side-mounted ladder system manufactured by Polar Corporation ("Polar").

The process of delivering the product to the Weyerhaeuser facility required Shockey to attach a drain line from the bottom of the tank trailer to a hose connected to the Weyerhaeuser tanks. After attaching the drain line, Shockey ascended the ladder to hook an air hose to a fitting at the top of the tank trailer in order to force the product out of the drain line at the bottom of the tank trailer. After the trailer was emptied, Plaintiff ascended the ladder to unhook the air hose from the top of the trailer. Upon descending the ladder after unhooking the hose, the first and second rungs from the top of the ladder broke causing Shockey to fall and break his right leg and injure his left leg. Shockey underwent surgery to repair his right leg.

Shockey alleges that Polar is liable for manufacturing a defective ladder, failing to warn, failing to correct the defect, and failing to prevent the defect; Shockey alleges that Weyerhaeuser is liable for failing to conform to safety standards in that it failed to provide safety measures for Shockey, such as safety harnesses, when climbing onto tanks. This Court previously recommended that the claims against Weyerhaeuser be dismissed. Polar has filed the Motion for Summary Judgment (Doc. #44) currently before the Court.

## LAW AND ANALYSIS

**Summary Judgment Standard**

Summary judgment is appropriate when the evidence before the Court shows that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. F.R.C.P. Rule 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" under this standard if the non-moving party has presented sufficient evidence that a reasonable jury could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden in summary judgment and must demonstrate through portions of the pleadings, depositions, answers to interrogatories, admissions and/or affidavits that no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has successfully demonstrated the absence of a genuine issue of material fact, the burden shifts to the non-moving party to show the opposite. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In doing so, the non-moving party may not merely rely on the allegations and conclusions contained within the pleadings; rather, he "must

go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Furthermore, these specific facts must be shown through something more than "some metaphysical doubt as to the material facts, by conclusory unsubstantiated allegations, or by a mere scintilla of evidence." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

**Louisiana Product Liability Act**

Plaintiff alleges claims arising under the Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.51, *et seq*. The LPLA serves as the exclusive state remedy for individuals who have been harmed by product defects. *See* La. R.S. 9:2800.52. Under the LPLA, the essential elements of a claim against a manufacturer of a product are that the product must have been used in a reasonably anticipated manner; that the product was unreasonably dangerous because of a defect in its design, a defect in its manufacture, or because of an inadequate warning; that the defect existed at the time the product left the manufacturer's control; and that the product was the proximate cause of the plaintiff's damages. *See* La. R.S. 9:2800.54(A).

**Design Defect Claim**

In his Petition, Plaintiff alleges that Polar is liable for:

1) Manufacturing a defective ladder and placing same into the stream of commerce for use by truck drivers;
2) Failing to warn plaintiffs of the above-referenced defect and potential injuries one could suffer from using said ladder;
3) Failing to take appropriate measures to correct said defect;
4) Failing to take appropriate measures to prevent this type of defect.

(Doc. #1 - Petition).

In Plaintiff's Opposition to the Motion for Summary Judgment (Doc. #64), he for the first time alleges a design defect. In its Reply to the Opposition (Doc. #66), Polar moves to strike

3

Plaintiff's attempt to include a design defect claim. Polar points out that Plaintiff testified at his deposition in June 2005 that he was not alleging a design defect. Plaintiff responded to Polar's Reply (Doc. #69) and claims that the allegation that Polar "manufactur[ed] a defective ladder and plac[ed the] same into the stream of commerce for use by truck drivers" is broad enough to include both a manufacturing and a design defect. Plaintiff also argues that his expert report advised Polar of the problems with the ladder design and that Polar's counsel deposed the expert about this issue.

Upon review of the filings in this case, the undersigned finds that the allegation of a design defect is untimely, and that evidence of a design defect should not be allowed at trial. Plaintiff testified in his deposition that he was not alleging a design defect.

First, although the Plaintiff argues that the allegation of "manufacturing a defective ladder" is broad enough to include a defective design claim, the undersigned disagrees. Plaintiff's original petition specifically alleged defects in manufacturing and warnings; if he had intended to allege a design defect, he could easily have done so. No design defect claim can reasonably be inferred from the language in the Petition.

Second, even if there were an argument that the petition could reasonably be interpreted to include a defective design claim, the plaintiff specifically denied that he was bringing such a claim in his deposition:

> Q. I think we've – for the purposes of our discussion, I want to make sure and sort of pin down what it is that you're complaining about. I've read your petition. Your complaint seems to be that the manner in which the ladder was manufactured was defective; right?

> A. Yes, sir.
>
> Q. In essence, it wasn't built correctly?
>
> A. Yes, sir.
>
> Q. It's not so much a design issue as it is that it's built wrong; right?
>
> A. Yes, sir.
>
> Q. You don't think the design of the ladder's bad, you think it was built wrong; is that fair?
>
> A. I'd say that's fair.

(Shockey Dep. pg. 53-54).

This case was filed in November 2004, and the deadlines for amendment of pleadings and for discovery have long since passed. The undersigned recommends that this Court decline to allow a design defect claim to be added at this late date.

**Manufacturing Defect**

Polar contends that the ladder was not unreasonably dangerous when it left the manufacturer, that the ladder was struck by vehicles and/or objects while owned by CTL, and that the damage sustained by the ladder during these impacts was the cause of the rungs' breaking and the plaintiff's fall. Polar asserts that damaging a ladder by side impacts is not an expected, foreseeable event that Polar is required to anticipate as a manufacturer of the product.

CTL's records show that the ladder had been damaged prior to this incident, and that the ladder had been re-welded and had other work performed on it by a third party, Superior Truck & Trailer ("Superior"). CTL produced a repair order, dated January 6, 2000, for this tank trailer

5

ladder showing that the ladder had been damaged and that a crack in the ladder was being repaired. (Craig Dep. pg. 11-12, 39-40). Another repair order, dated February 1, 2000, showed that the same tank trailer ladder was "straightened" by an in house repairman because the ladder had been "bent." (Craig Dep. pg. 6-10). A third repair order, dated January 3, 2003, showed that the ladder had been damaged and re-welded. (Craig Dep. pg.12-13).

C.A. Buddy Bollfrass ("Bollfrass"), Polar's expert witness, concurred that the subject tank trailer and ladder system show significant signs of abuse and damage and make-shift efforts to patch and repair. Bollfrass opined that the trailer had side-swiped some object(s) or had been side-swiped by moving vehicles and that these incidents caused the ladder to "flex as an integral structure, creating significant unexpected stress to the welds at each rung on the ladder. That as a sole result of the side-swipe and side impact damage to the ladder, the welds on the rungs at issue cracked and, due to a failure to properly inspect and repair the ladder system, the rungs may have failed under the weight of plaintiff's body weight." (Bollfrass Affidavit).

Plaintiff testified in his affidavit that the rung that failed had not been re-welded and that they were the original welds by Polar. (Shockey Affidavit). However, as Polar pointed out, the Plaintiff later testified that he did not know whether the subject rung was an original weld. (Shockey Dep. pg. 77-78). Crowell, a Weyerhaeuser employee who came upon the accident after Plaintiff fell, testified that the rung that failed was the original Polar weld, but later testified that it was unclear if it was an original weld. (Crowell Dep. pg. 14, 19).

Plaintiff also argues that the weld itself should be stronger than the metal around it. Plaintiff has provided an affidavit from his expert, Bryan R. Durig ("Durig"), stating that a "proper welded connection should fail through the base material rather than through the weld

6

material" and that photographs show that the top portion of the ladder did not have any significant damage, but that prior damage was on the lower portion of the ladder. Durig opined that "it does not appear that prior damage to the lower portion of the ladder caused any excessive loading at the subject ladder rung near the top of the ladder." (Durig Affidavit). Plaintiff argues that there is a genuine issue regarding whether the original welding on the ladder was defective because the weld itself failed instead of the material around it.

Given the inconsistencies in the testimony, and the conflicting theories given by the expert witnesses, the undesigned finds that there is a genuine issue of material fact as to whether the ladder was defectively manufactured.

Therefore, for the reasons stated above**, IT IS RECOMMENDED** that Polar's Motion for Summary Judgment (Doc. #44) be **DENIED.  IT IS FURTHER RECOMMENDED** that the untimely design defect claim be stricken and that no evidence of a design defect be admitted at trial.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE**

**SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 20th day of April 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE